IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KEITH E. DOYLE, | Cause No. CV 2:22-37-BU-BMM |
| Petitioner, | |
| vs. | **ORDER** |
| JIM SALMONSEN, Warden, Montana State Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondent. | |

Keith Doyle ("Doyle") has petitioned for a writ of habeas corpus. Doyle is incarcerated at Montana State Prison and proceeds pro se in this matter. (Offender record at https://app.mt.gov/conweb, viewed on April 7, 2023.) The Court previously directed the State to file various documents to elucidate Doyle's allegations. The Court now will dismiss Doyle's petition.

### I.    Background

The Court has gleaned the following factual context from the Montana state district and municipal court records the State has submitted, the publicly available opinions of the Montana Supreme Court, and Doyle's petition and brief in support. (Doc. 1); (Doc. 1-1.) Doyle received an opportunity to review the documents submitted by the State and does not object to them. (Doc. 7.)

1

A Montana state district court sentenced Doyle in 2005 to 780 months' imprisonment for an Accountability for Deliberate Homicide conviction. (Doc. 6-48 at 7.) He previously was paroled to a prerelease center in Billings on January 22, 2020, and then released into the Billings community on December 10, 2020. (Doc. 6-48 at 7.)

Law enforcement arrested Doyle on a misdemeanor Partner or Family Member Assault charge on March 30, 2021. *Id.* He made his initial appearance on the charges on March 31, 2021, and entered his plea. (Doc. 6-1 at 4.) Doyle, while in pretrial detention, kited to change his plea. (Doc. 6-10.) The Yellowstone County Detention Facility issued an authorization for Doyle's release on his own recognizance on April 21, 2021, but he was not released. (Doc. 6-17.)

Doyle later pleaded guilty to the charge of Partner or Family Member Assault, and a Billings municipal court sentenced him on his new charge on September 7, 2021. (Doc. 6-38.) The judgment of the municipal court directed that Doyle be released (Doc. 6-38), but Doyle remained in detention and was transferred to Montana State Prison on his parole revocation on October 28, 2021. (Doc. 6-50.) Doyle received notice on November 8, 2021, of a hearing before the Board of Pardons and Parole, which took place on November 23, 2021. (Doc. 6-53 at 6.) Doyle did not present witnesses and was not represented by counsel at the hearing. The Board of Pardons and Parole revoked Doyle's parole. (*Id.*, at 8-9.)

Doyle, on March 28, 2022, petitioned for habeas corpus in the Montana Supreme Court, proffering the same grounds he here asserts. The Montana Supreme Court considered whether the failure to provide Doyle a preliminary parole revocation hearing upon his arrest in March 2021 represented a constitutional violation, and, implicitly, whether Mont. Code Ann. § 46-23-1024(1)(b) itself is unconstitutional. *Doyle v. Salmonsen*, OP 22-0119 (Mont. April 19, 2022). The Montana Supreme Court denied his habeas petition. *Doyle v. Salmonsen*, OP 22-0119 (Mont. April 19, 2022).

## II. Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). *See Knowles v. Mirzayance,* 556 U.S. 111, 114 (2009). The Montana Supreme Court reasonably applied the binding precedent of the United States Supreme Court to Doyle's case. His claim does not survive AEDPA review.

### A. Denial of a Preliminary Probable Cause Hearing

The United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471 (1972), the held that, although parolees enjoy only "conditional liberty," termination of that liberty constitutes a "grievous loss" requiring "some orderly process." *Morrissey*, 408 U.S. at 495. "[T]he revocation of parole is not part of a criminal prosecution," however, "and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id*. at 480. The United States Supreme Court determined the process due to a person facing parole revocation includes "two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–782 (1973) (*citing Morrissey,* 408 U.S. 471). *Morrissey* explains, however, that the requirements of due process are flexible, and "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey,* 408 U.S. at 481. Both *Morrissey* and *Gagnon* require a probable cause determination before parole is revoked, but individual states may implement different procedures and still satisfy due process. *See generally, Morrissey*, 408 U.S. at 481, 485, 487; *Gagnon,* 411 U.S. at 782.

Doyle's petition in this Court alleges that he did not receive the process due

4

to him under *Morrissey v. Brewer*, 408 U.S. 471 (1972). He contends that a state statute, Mont. Code Ann. § 46-23-1024(1)(b), unconstitutionally eliminates his right to appear, speak, and present evidence on his own behalf at a preliminary probable cause hearing. *See Morrissey*, 408 U.S. at 486–87. Doyle also invokes the equal protection clause, in that some parolees receive a preliminary probable cause hearing and others do not, making their treatment unequal. (Doc. 1 at 4.)

*Morrissey* states that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. . . . Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S. Ct. 2593, 2602, 33 L. Ed. 2d 484 (1972) (internal citations omitted).

A preliminary revocation hearing was not held at the time of Doyle's arrest on his new charges. The Montana Supreme Court noted that Mont. Code Ann. § 46-23-1924(1)(b) provides that an initial hearing need not be held when a parolee has been charged in any court with a violation of the law. The Montana Supreme Court determined that Doyle was not entitled to an on-site hearing, and that probable cause to initiate the revocation proceedings existed by virtue of his arrest on the partner

assault charge. *Doyle v. Salmonsen*, OP 22-0119, at *2 (Mont. April 19, 2022). The Montana statute effectively repurposes the process due at the initiation of a criminal prosecution as a means to satisfy the *Morrissey* requirements: if the criminal court provides the defendant the process that he is due on the new criminal charge, it de facto provides him the process due on his revocation.

*Morrissey* allows the State of Montana to implement its own, independent procedures so long as they still satisfy due process. *Morrissey*, 408 U.S. at 481. The Montana Supreme Court properly considered the United States Supreme Court's ruling precedent in *Morrisey*. *Doyle*, OP 22-0119, at *2. Doyle has not demonstrated the Montana Supreme Court's decision denying his claim was contrary to or involved an unreasonable application of *Morrisey*. The Court must defer under 28 U.S.C. § 2254(d) and deny the claim.

### B. Equal Protection

Doyle also contends that the deprivation of a preliminary hearing constituted an equal protection violation because sometimes other incarcerated people receive a preliminary hearing, even when charged with a new crime. (Doc. 1 at 4.) He offers no basis for this claim other than his assertion that such was the case in another matter before this Court, *Griebel v. Montana Board of Parole*, CV 21-35-H-BMM-JTJ, 2021 WL 5088851, October 12, 2021. Doyle has cited Griebel's 42 U.S.C. § 1983 case. Griebel also filed a petition for habeas corpus in this Court making

essentially the same underlying claims regarding revocation of his parole. *Griebel v. Salmonsen*, CV-21-20-H-DWM, 2021 WL 3565575, (August 12, 2021). The facts related to Griebel's revocation charges, his hearings, and his state court process appear identical in both.

Doyle did not raise this ground for relief before the Montana State Supreme Court and has failed to exhaust his state remedies. *Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004). Whether the claim is defaulted represents a separate question, but it proves clear to the Court that Doyle is not entitled to relief on the merits of his equal protection claims. The Court deems it efficient to address the merits despite Doyle's failure to exhaust. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).

The Court notes that, as an initial matter, Doyle's factual assertions regarding the *Greibel* cases prove incorrect, and these cases undergird the entirety of Doyle's assertions regarding equal protection. Griebel did have a preliminary hearing in one parole revocation proceeding, but, as the record shows, the preliminary hearing did not relate to new, independent criminal charge. Doyle's situation differs significantly from the circumstances in which Griebel received a preliminary hearing. Griebel's second arrest, in contrast, was not followed by a preliminary hearing, because, as in Doyle's case, Mont. Code. § 46-23-1023(1) applied. "The Fourteenth Amendment prohibits a state from 'deny[ing] to any person within its jurisdiction the equal

7

protection of the laws.' The Equal Protection Clause does not require identical treatment; rather, it 'guarantees that the government will not classify individuals on the basis of impermissible criteria.'" *Seeboth v. Allenby*, 789 F.3d 1099, 1104 (9th Cir. 2015) (quoting *Coal. for Econ. Equity v. Wilson,* 122 F.3d 692, 702 (9th Cir.1997)) (other citations omitted).

Doyle has not alleged sufficiently a claim for unequal treatment: his only factual assertion is, on its face, inaccurate. Even if Griebel had received a preliminary hearing that was not required by law, however, Doyle has failed to state a prima facie case of an equal protection violation: "a mere demonstration of inequality is not enough; the Constitution does not require *identical* treatment. . . . [A]n allegation of invidiousness or illegitimacy in the statutory scheme [must exist] before a cognizable claim arises . . . [I]t is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991). Doyle's assertion that, though the process he received proved constitutionally sound, someone else may have received more process than he remains insufficient to mount a claim for an equal protection violation. Doyle also has not alleged that he was treated differently because he is a member of a particular class, suspect or otherwise. *Caswell v. Calderon*, 363 F.3d 832, 838 (9th Cir. 2004). The Court will dismiss Doyle's equal protection claim.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A certificate of appealability should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Doyle has failed to make a substantial showing of a denial of a federal constitutional right. Doyle's *Morrisey* claim does not survive deferential review under AEDPA. Doyle's equal protection claim lacks merit. Accordingly, jurists would find no basis to encourage further proceedings. The Court denies certificate of appealability.

### ORDER

Accordingly, **IT IS ORDERED** that:

1. Doyle's Petition (Doc. 1) is **DENIED**.

2. The Clerk of Court is directed to enter judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is **DENIED**.

DATED this 20th day of April, 2023.

/s/ Brian Morris

Brian Morris, Chief District Judge
United States District Court